**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE LYNN DAY,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                    Defendant.<br>_____ | Case No.  1:15-cv-00479-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY APPEAL** |

**INTRODUCTION**

Plaintiff Laurie Lynn Day ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. §§ 405(g); 1383.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)

**FACTUAL BACKGROUND**

Plaintiff was born on June 12, 1962, and alleges disability beginning on November 27, 2011, due to stroke, depression, memory loss, ringing in her ears with headaches, no retention of information, facial numbness, inability to focus, numbness from the knees down her legs, and incontinence. (Administrative Record ("AR") 29; 193.)

**A.     Relevant Evidence**

On November 11, 2010, Plaintiff underwent a stroke "event" and cerebrovascular accident with mild expressive aphasia for which she was hospitalized. (AR 303-04, 321). She was discharged on November 13, 2010. (AR 321.) She followed up with a cardiac evaluation on December 21, 2010, where Dalpinder Sandhu, M.D., recommended Plaintiff use a Holter monitor to assess for any cardiac source.

On November 30, 2011, Plaintiff was examined by Jeffery Hubbard, M.D., and complained of shoulder pain and neurological issues. (AR 325.) Dr. Hubbard's examination showed Plaintiff had a normal range of motion in her musculoskeletal system; was alert and oriented to person, place, and time; and had normal reflexes. (AR 326.) Plaintiff had a cranial nerve deficit and abnormal muscle tone, coordination, and gait, as well as normal behavior, mood, affect, and thought content. Dr. Hubbard diagnosed Plaintiff with hyperalphalipoproteinemia,[2] cerebral infarction, and shoulder instability, and he recommended orthopedic surgery. (AR 325-26.)

On February 23, 2012, Plaintiff underwent a pre-operative evaluation with David Taylor, M.D., for left-shoulder instability. (AR 422-23.) At that time, her extremities appeared normal, she was alert and oriented, and she did not display any signs of anxiety or depression. (AR 423.) She was positive, however, for memory loss although she had a normal mood and affect. (AR 446.) Plaintiff underwent surgery on February 28, 2012 (AR 426-29), and on March 9, 2012, Plaintiff was feeling better, had no post-operative pain, and reported she had not been using any assistive devices. (AR 424.)

---

[2] Hyperalphalipoproteinemia is defined as the presence of abnormally high levels of high-density lipoproteins in the blood. *Dorland's Illustrated Medical Dictionary* 898 (31st ed. 2007).

2

On April 3, 2012, Plaintiff underwent a psychological assessment with Steven C. Swanson, Ph.D. (AR 456-62). Dr. Swanson noted Plaintiff was independently able to partake in all activities of daily living, which included driving a car. (AR 457.) Plaintiff reported she was able to pay bills, cook, and watch television. (AR 458.) On examination, Plaintiff was sufficiently oriented to person, time, place, and situation, and she was cooperative during the assessment. Plaintiff's level of eye contact, general fund of knowledge, and short-term recent and remote memories were within normal limits. Plaintiff ambulated independently, and Dr. Swanson did not observe any unusual patterns in her gait or postural presentation. Plaintiff did not have any peculiarities in her speech, her form and thought content were normal, and she did not exhibit any signs of delusion, disorder of perception, psychosis, or suicidal or homicidal thoughts. (AR 458.) Vegetative signs of depression were mostly absent as well. Her concentration was adequate for performing simple mathematical calculations, and her judgment and insight were intact. On the Wechsler Adult Intelligence Scale, 4th Edition (WAIS-IV), Plaintiff scored a 72. Dr. Swanson noted that "[Plaintiff's] effort was not optimal; consequently this may be a low representation of her true intelligence." (AR 460.)

Dr. Swanson opined Plaintiff was capable of maintaining concentration, relating appropriately to others in the workplace, handling funds in her own best interests, and responding appropriately to typical work situations. (AR 461.) Dr. Swanson assessed no substantial restrictions in daily activities or in maintaining social relationships. (AR 462.)

On April 18, 2012, Plaintiff underwent a neurological evaluation by Fariba Vesali, M.D., board-certified in internal medicine and rehabilitation. (AR 465-68.) Plaintiff acknowledged that she occasionally shopped for groceries, cooked, washed dishes, mopped, swept, and vacuumed. (AR 465.) She was alert and oriented to time, place, and person; spoke fluently with full sentences; had a normal gait; and did not need an assistive device for ambulation. (AR 466.) She was able to untie and take off her shoes and put them back on without difficulty. Dr. Vesali diagnosed Plaintiff with a cerebrovascular accident in November 2010 (AR 467), and opined she could walk, stand, and sit for six hours in an eight-hour workday with normal breaks; lift and carry 50 pounds occasionally and 25 pounds frequently; reach and handle frequently; and finger and feel

1  without limitations (AR 468.)

2  On August 10, 2012, Plaintiff saw Richard Alexan, M.D., reporting headaches, trouble walking, weakness on the right, and difficulty with speech. (AR 489.) She did not show any abnormalities in her mental status at that time. (AR 490.) An EEG (electroencephalography) conducted on August 21, 2012, showed a "normal awake, drowsy, and stage 1 sleep EEG recording." (AR 478.) An MRA (Magnetic Resonance Angiography) scan of her brain, performed on August 22, 2012, did not detect any abnormalities or evidence of aneurysm, major branch occlusion, or stenosis. (AR 475.) An MRI (Magnetic Resonance Imaging) scan on the same day did not show any abnormalities, but showed Plaintiff had sinus disease. (AR 476-77.) The doctor informed Plaintiff that her symptoms were probably unrelated to her previous stroke at her follow-up appointment on August 31, 2012. (AR 473.) Plaintiff described stress as being a major problem for her, although she denied being depressed and that she had ever sought counseling.

On December 27, 2012, Plaintiff followed up with Dr. Alexan to review her MRI results. (AR 572.) Dr. Alexan indicated Plaintiff had recovered from her stroke and that her symptoms were likely non-neurological. (AR 573.) He reiterated his belief in her full recovery again in February 2013. (AR 574.)

On March 25, 2013, Plaintiff underwent a neuro-physical consultative evaluation by Dale Sherman, Ph.D. (AR 559.) At the examination, Plaintiff was able to read items at a 20/20 level and correctly name basic colors in a palette. (AR 562.) She appeared to be a moderate historian, and though she had difficulty describing events and accurately providing details about her history and conditions, she described events and responded to questions moderately well. Her activity level was noted to be adequate and within normal limits for her age; her speech was of normal and rhythm; and her thought processes appeared to be goal-directed and linear. However, Plaintiff was easily distracted and required redirection; her attention, concentration, insight, judgment, and abstract thinking were below expectations; and she did not exhibit paranoid thinking, hallucinations, or delusions. (AR 562-63.)

//

Dr. Sherman opined Plaintiff's complaints, history, symptoms, and test scores were consistent with cognitive impairment and depression. (AR 564.) The examination results indicated that Plaintiff's mental status, general cognitive state, attention, concentration, motor functioning, non-verbal and verbal memory, executive functions, speed of information processing, language, and functional ability were impaired; her motivation and cooperation were adequate; and her intelligence and visuospatial and constructional abilities were borderline. (AR 562-63). Dr. Sherman further opined Plaintiff would have difficulty with her memory, information of increasing complexity and multi-tasking, and deciphering words spoken to her. (AR 563.)

On May 7, 2013, Plaintiff again followed up with Dr. Alexan to review test results. (AR 576-77.) Plaintiff reported no new changes or symptoms. (AR 576.) Plaintiff reported waking up feeling restless, and admitted to stress as a major problem. (AR 576.) She denied feeling depressed, but admitted to frequent crying spells. (AR 576.) On examination, Plaintiff was alter, oriented to person, place, and time; was able to concentrate; and her language was intact to all modalities. Her gait was noted to be narrow based. (AR 577.) Dr. Alexan increased Plaintiff's prescription for Lexapro, and noted Plaintiff would follow up with her doctor at Cedar Sinai. (AR 577.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 76-109, 115-23.) A hearing was held on September 4, 2013. (AR 37-75.)

On September 11, 2013, the ALJ issued a decision, finding Plaintiff not disabled from November 27, 2011, through the date of decision. (AR 21-31.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date November 27, 2011 (AR 23); (2) Plaintiff had severe impairments: status-post stroke, cervical spine fusion, and depression (AR 23); (3) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

//

//

5

(AR 24); and (4) had the residual functional capacity ("RFC")[3] to perform less than a full range of light work, could lift 20 pounds, sit, stand, and walk for a total of 6 hours each in an 8-hour work day, and was limited to performing simple, repetitive tasks (AR 26.)  The ALJ found that Plaintiff was unable to perform her past relevant work, but could perform other work including that of a photocopier, a housekeeping cleaner, and an office helper. (AR 30.)  The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from November 27, 2011, through the date of decision.  (AR 30.)

Plaintiff sought review by the Appeals Council on September 20, 2013.  (AR 9-11.)  The Appeals Council denied Plaintiff's request for review on January 29, 2015.  (AR 3-8.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981; 416.1481.

**C.    Plaintiff's Argument on Appeal**

On March 26, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff argues the ALJ failed to properly consider Dr. Sherman's opinion regarding Plaintiff's current level of functioning, accepting some functional limitations while rejecting others.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

6

scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"),  20 C.F.R. 404,

Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

Plaintiff contends the ALJ improperly and selectively relied only on those portions of Dr. Sherman's opinion that supported the ALJ's RFC assessment. (Doc. 15, p. 7.) Plaintiff asserts the ALJ's rationale for rejecting Dr. Sherman's opinion is not based on substantial evidence, arguing that the record clearly supports Dr. Sherman's assessment because Plaintiff was deteriorating cognitively. (Doc. 15, p. 8 (noting Plaintiff's IQ scores in 2012 and 2013 "make clear that she has worsened cognitively").

The Commissioner asserts the ALJ properly considered all the medical evidence of record to reach a conclusion supported by substantial evidence. (Doc. 20, pp. 6-11.) The Commissioner contends the ALJ was not required to accept every portion of Dr. Sherman's opinion, and the ALJ provided clear grounds for granting varying weight to different portions of Dr. Sherman's opinion.

The ALJ discussed Dr. Sherman's opinion at length:

> Dr. Sherman, a psychologist, performed a neuropsychological evaluation of the claimant in March 2013. Following the examination, Dr. Sherman opined that the claimant is likely to have significant difficulty in most domains of cognitive functioning and will [] have difficulty following and repeating information spoken to her. Dr. Sherman also opined that the claimant will also have difficulty with information of increasing complexity and will have a difficult time with multitasking. She opined that the claimant should have little difficulty with fluid problem solving and her ability to think on her feet. (Exhibit 19F, pg. 7). Dr. Sherman's opinion that the claimant will have difficulty with complex information is given great weight, as it is consistent with the medical evidence, the opinion of psychological consultative examiner and the claimant's activities of daily living. Dr. Sherman's opinion that the claimant is likely to experience difficulty with comprehending and deciphering elements common to daily activities is given little

weight because it is inconsistent with the evidence that the claimant is able to independently complete relatively normal activities of daily living. Dr. Sherman also opined that the claimant is likely to have difficulty with tasks requiring manipulating small objects. (Exhibit 19F, pg. 7). However, this opinion is given little weight, as it is inconsistent with the findings of the neurological consultative examiner and his observation that the claimant was able to untie her shoes and take them off and put them back on without difficulty. (Exhibit 8F, pg. 4). Furthermore, it is important to note that Dr. Sherman [is] a psychologist, not a medical doctor. Therefore, his opinion regarding the claimant's physical limitations is given reduced weight.

(AR 28-29.)

Plaintiff first argues it was improper for the ALJ to only credit those functional limitations which supported his own RFC assessment. However, so long as supported by legally sufficient reasons for doing so, an ALJ may credit only certain portions of a physician's opinion while disregarding other portions. This, in and of itself, is not error. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence).

Plaintiff next argues that Dr. Sherman's entire opinion should have been credited because it was based on the most recent psychological tests. Though probative to evaluating Plaintiff's cognitive decline, the most recent opinion is not entitled to controlling weight merely because it is the most recent. *Id.*, 881 F.2d at 754-55 (noting that where a plaintiff's condition becomes progressively worse, medical reports from a later phase of the disease are likely to be more probative than later reports) (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). If it is not supported by other medical evidence or there are other legally sufficient reasons to discount Dr. Sherman's opinion, the mere fact that it is the most recent opinion is not dispositive.

The ALJ rejected Dr. Sherman's opinion that Plaintiff is likely to experience difficulty with comprehending and deciphering elements common to daily activities because this opinion is inconsistent with the evidence that Plaintiff is able to independently complete relatively normal activities of daily living. Plaintiff argues the ALJ failed to recognize the downhill spiral of Plaintiff's functioning – i.e., Plaintiff's description of daily activities in the months or years prior to Dr. Sherman's opinion have no bearing on Plaintiff's daily living abilities at the time of the examination, particularly as her condition was worsening. Plaintiff maintains her current activities

of daily living are not inconsistent with Dr. Sherman's opinion.

The Commissioner disputes that the evidence establishes Plaintiff's condition was deteriorating. Plaintiff's treating physician, Dr. Alexan, saw Plaintiff on three occasions between December 2012 and May 2013, and there was no evidence of deterioration. (*See* AR 572-77.) Plaintiff had fully recovered from her stroke, her speech and movement of her arms and legs was all normal, and she was experiencing a good recovery. (AR 574.) The Commissioner points to these treatment notes from Dr. Alexan, both *before and after* Dr. Sherman's March 2013 opinion, as demonstrating that there were " [n]o new changes or symptoms" and that Plaintiff "did not specify any particular complaint of worsening symptoms" during the same period of time when Dr. Sherman had opined to disabling symptoms. (Doc. 20, p. 11 (quoting AR 28, 572, 576).) The Court agrees.

The medical evidence from Dr. Alexan, which was collected both before and after Dr. Sherman rendered his opinion, did not show any symptoms or complaints that indicated a worsening condition. Plaintiff reported she shopped for groceries, cooked, washed dishes, mopped, swept, and vacuumed. Participating in these activities does not comport with Dr. Sherman's opinion Plaintiff would have difficulty comprehending and deciphering elements common to daily activities. Although Plaintiff argues her activities of daily living "fall in line with Dr. Sherman's opinions," she gives no examples of how her daily activities show she has "difficulty comprehending and decipher elements common to daily activities."

The ALJ also rejected Dr. Sherman's opinion that Plaintiff would have difficulty with tasks requiring manipulation of small objects. (AR 29.) Plaintiff argues this is error because it is based on the ALJ's failure to recognize Dr. Sherman's opinion related to Plaintiff's functioning in 2013, not in 2012. The ALJ relied on Dr. Vesali's April 2012 opinion that Plaintiff had no postural limitations, and she would be able to do fingering and feeling with no limitations. (AR 468.) Plaintiff points to no evidence to support Dr. Sherman's contrary opinion in March 2013, or what findings indicate her dexterity and handling had worsened since April 2012. It is not clear what tests Dr. Sherman performed to evaluate Plaintiff's dexterity and handling abilities such that there was any objective basis to conclude her handling, fingering, and dexterity abilities had eroded

since 2012.  Moreover, the ALJ noted Dr. Sherman was a psychologist, not a medical doctor, and his opinion in this regard was not entitled to weight.  Following Dr. Sherman's examination in March 2013, Plaintiff was examined by her treating physician Dr. Alexan, who did not note Plaintiff had any difficulties with handling or dexterity.  The ALJ properly gave more weight to Dr. Vesali and Dr. Alexan's treating notes on the matter of Plaintiff's handling and dexterity than that of Dr. Sherman, a psychologist, who apparently did no physical testing.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of nonspecialists"); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (holding that ALJ should have given greater weight to a physician with the expertise that was most relevant to the patient's allegedly disabling condition).

In sum, the ALJ did not err in according Dr. Sherman's opinion only partial weight.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **May 10, 2016**                                         **/s/ Sheila K. Oberto**
                                                                  UNITED STATES MAGISTRATE JUDGE